UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Verscene Inc. and Seeyond Inc.,

      Plaintiffs,

v.                                                                                    Civil No. 12-1088 (JNE/SER)
                                                                               ORDER

HNI Corporation and Allsteel Inc.,

      Defendants.

---

Lora Mitchell Friedemann, Esq., and Ted C. Koshiol, Esq., Fredrikson & Byron, P.A., appeared for Plaintiffs Verscene Inc. and Seeyond Inc.

James R. Steffen, Esq., Faegre Baker Daniels LLP, appeared for Defendants HNI Corporation and Allsteel Inc.

---

      This is an action by Plaintiffs Verscene Inc. and Seeyond Inc. against Defendants HNI Corporation and Allsteel Inc. for trademark infringement, violation of the Minnesota Deceptive Trade Practices Act, unfair competition, and refusal of registration. The case is before the Court on Plaintiffs' Motion for Temporary Restraining Order. The Court heard and denied the motion on May 30, 2012. This Order explains the motion's denial in greater detail.

      In December 2010, Verscene Inc. applied to register SEEYOND as a trademark with the U.S. Patent and Trademark Office. The SEEYOND trademark has been used exclusively by Seeyond Inc. with Verscene Inc.'s permission. According to Plaintiffs' general manager, the Seeyond product is a "user-controlled system that allows an interior architect or designer to create one-of-a-kind non-loadbearing walls, enclosures, and design features to customize and differentiate spaces." Plaintiffs introduced the Seeyond product at the NeoCon Exposition and Conference in June 2011. Allsteel Inc., a subsidiary of HNI Corporation, intends to introduce a movable glass wall system, known as the Beyond product, at the NeoCon Exposition and

1

Conference in June 2012. Plaintiffs moved for a temporary restraining order to prevent Defendants from using the name Beyond.

In deciding whether to grant a motion for a temporary restraining order, a court considers: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the harm experienced by other parties if the order issues; and (4) the public interest. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). To demonstrate a likelihood of success on the merits, a plaintiff must demonstrate a "fair chance of prevailing." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). A temporary restraining order is an extraordinary remedy. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The movant bears the burden of establishing the *Dataphase* factors. *CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009).

Plaintiffs based their motion on their claims for trademark infringement and unfair competition. The parties did not separately analyze the claims. *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003).

### *Likelihood of success on the merits*

"To prove a trademark infringement claim, a plaintiff must show that it has a valid, protectible mark and that there is a likelihood of confusion between its mark and the defendant's mark." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 n.2 (8th Cir. 2009). Where, as here, a plaintiff's trademark is not registered, the plaintiff bears the burden of establishing that its mark is protectible under trademark law. *Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.*, 426 F.3d 1001, 1003 (8th Cir. 2005). Here, Plaintiffs' assertion that there is a likelihood of confusion between their SEEYOND mark and Defendants' BEYOND

2

mark raises an issue as to whether Plaintiffs have a valid mark.  In October 2006—several years before Verscene Inc. applied to register SEEYOND—a third-party, Dorma GmbH + Co. KG, registered BEYOND as a trademark for use in connection with hardware for glass doors, glass doors, and glass doors used in separation walls of glass.[1]  Plaintiffs assert that Dorma has not used the BEYOND mark in connection with glass doors or glass walls, but the record does not adequately address how Dorma has used the mark.  Setting aside the issue of Dorma's BEYOND mark, the Court notes that Defendants did not contest Plaintiffs' assertion that the SEEYOND mark is distinctive and nonfunctional.  *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994).

> A court considers six factors to determine whether there is a likelihood of confusion:
>
> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and the alleged infringing mark; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion.

*Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 775 (8th Cir. 2010) (citing factors set forth in *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980)).  "Under *SquirtCo*, no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases."  *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1054 (8th Cir. 2005).  In addition, "the factors are not entirely separable":

> For example, it is inappropriate to conduct a side-by-side comparison of the elements of two products' trade dress . . . without reference to the senior mark's strength or the market conditions under which likely consumers would see the marks.  Rather, our comparison of the similarity between marks and products must occur in a context that recognizes how consumers encounter the products and how carefully consumers are likely to scrutinize the marks.

---

[1] According to one of Allsteel's vice presidents, Allsteel and Dorma have agreed between themselves that their uses of "Beyond" on their respective products are not likely to create purchaser confusion.

3

*Id.* (citation omitted).

*Strength of the mark*

A mark's strength consists of both conceptual strength and commercial strength. *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1150 (D. Minn. 2001); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:83 (4th ed. 2012) ("While some courts have made the strong-weak evaluation solely upon the place of a term on the spectrum of marks, such an approach is incomplete. One must in addition look at the marketplace strength of the mark at the time of litigation or at the time registration is sought." (footnote omitted)). Plaintiffs assert that their SEEYOND mark is "very distinctive and entitled to robust protection." Defendants acknowledge that the mark "may be a conceptually strong mark."

"In the likelihood of confusion context, a mark's commercial strength or 'fame' is determined based on the 'public recognition and renown' of the mark as evidenced by the extent of advertising, sales volume, features and reviews in publications, and survey evidence." *Roederer v. J. Garcia Carrión, S.A.*, 732 F. Supp. 2d 836, 866-67 (D. Minn. 2010). According to Plaintiffs' general manager, Plaintiffs have expended more than $2 million to promote the Seeyond product, the product has received coverage in major trade publications, and more than 200 presentations about the product have been made to design firms. Nevertheless, Plaintiffs acknowledge that "Seeyond is still a relative newcomer in the universe of design products" and that "Seeyond, as a new company, continues to build brand recognition." It appears that the SEEYOND mark has yet to become commercially strong.

*Similarity*

"Rather than consider the similarities between the component parts of the marks, we must evaluate the impression that each mark in its entirety is likely to have on

4

> a purchaser exercising the attention usually given by purchasers of such products." "The use of identical, even dominant, words in common does not automatically mean that two marks are similar." "We may consider the marks' visual, aural, and definitional attributes and compare the trade dress of the products in determining whether the total effect conveyed by the two marks is confusingly similar."

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 764 (8th Cir. 2010) (citations omitted), *cert. denied*, 131 S. Ct. 1603 (2011). "We have continually held the use of identical dominant words does not automatically equate to similarity between marks." *Id.* at 765.

There is some similarity between the SEEYOND and BEYOND marks—they differ in their first syllable. Nevertheless, Plaintiffs' use of SEEYOND in connection with products that compete, to some degree, in an area where Dorma has a registered trademark in BEYOND suggests that there will not be confusion between the SEEYOND and BEYOND marks. Significant distinctions appear in the parties' presentation of their marks. Plaintiffs' SEEYOND appears in capital letters on two lines—"SEE" above "YOND"—set against a green square with two clipped corners. Defendants' BEYOND appears as a single word in lowercase letters without any background design feature. As explained below, selection of these products requires a high level of care and attention. On the limited record before the Court, it appears that the total effect conveyed by the parties' marks is not confusingly similar.

*Degree of competition*

> A showing of direct competition . . . is not required, and the factor "degree of competition" requires a broader examination of the products' relationship in the market. Where products are wholly unrelated, this factor weighs against a finding that confusion is likely. Where products are related, however, it is reasonable for consumers to think that the products come from the same source, and confusion, therefore, is more likely.

*Kemp*, 398 F.3d at 1056. Although Plaintiffs' product may be put to uses for which Defendants' product would not be well suited, the parties' products are targeted at the same audience, may be

5

put to similar uses, and will be similarly priced. There is some competition between the products at issue.

*Intent to confuse*

Plaintiffs assert that the Court may infer "Defendants intend to usurp Seeyond's good will because they chose the confusing[ly] similar Beyond designation with knowledge of Seeyond's trademark." According to Plaintiffs, Defendants attended NeoCon 2011, contacted Plaintiffs after the conference, and asked Plaintiffs to present the Seeyond product. In September 2011, Plaintiffs' general manager visited Allsteel and provided information about the Seeyond product.

"Knowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." *Sensient Techs.*, 613 F.3d at 766 (quoting *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999)). Defendants' Beyond product name originated with Eberhard Von Heune & Associates, Inc. (EVH), long before NeoCon 2011. In May 2010, EVH filed a Canadian application to register BEYOND as a mark for use in connection with partition walls. In April 2011, EVH filed a U.S. application to register BEYOND as a mark for use in connection with movable and demountable wall partitions. EVH assigned the Canadian registration and U.S. application for the BEYOND mark to Allsteel. In addition, Allsteel intends to make prominent use of Allsteel in all marketing materials for the Beyond product. This intention is borne out in the promotional materials it prepared even before this lawsuit was commenced. The Court discerns no intent to confuse on the part of Defendants.

*Degree of care reasonably expected of potential consumers*

The parties' products are marketed to sophisticated professionals: architects and interior designers. The products are custom-made and custom-installed. Significant collaboration with the parties attends the purchase of their products. The parties' products are expensive: $300 to $800 per lineal foot. A high degree of care can be reasonably expected in connection with the purchase of the parties' products.

*Evidence of actual confusion*

Defendants' Beyond product has not been introduced to the market. There is no evidence of actual confusion.

Having considered the *SquirtCo* factors and the very limited record available at this early stage of the litigation, the Court concludes that Plaintiffs have not demonstrated a likelihood of success on the merits that would warrant the extraordinary relief sought.

**Threat of irreparable harm**

Having concluded that Plaintiffs have not demonstrated a likelihood of success on the merits that would warrant the extraordinary relief sought, the Court rejects Plaintiffs' argument that a threat of irreparable harm should be presumed. *Cf. Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011). Plaintiffs have not otherwise adequately substantiated a threat of irreparable harm. *See Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319-20 (8th Cir. 2009).

**Balance of harms**

Having concluded that Plaintiffs have not demonstrated a threat of irreparable harm, the Court concludes that the balance of harms favors Defendants. Less than two weeks before NeoCon 2012, which the parties recognize is the industry's most important annual event, a

temporary restraining order would upset the efforts made by Defendants to introduce the Beyond product. The disruption to Defendants would be very harmful.

*Public interest*

Plaintiffs assert that a temporary restraining order serves the public interest by preventing confusion in the marketplace. On the limited record available in this case, the Court concludes that a temporary restraining order would not serve the public interest.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Temporary Restraining Order [Docket No. 6] is DENIED.

Dated: June 1, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge